IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Jason Reed, | ) |
|            Plaintiff, | ) C/A No. 5:08-3022-MBS |
| vs. | ) |
| | ) **OPINION AND ORDER** |
| South Carolina State University, | ) |
|            Defendant. | ) |

Plaintiff Jason Reed filed the within action on August 29, 2008, alleging that Defendant South Carolina State University ("SCSU") discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and violated his due process rights. See Compl. ¶¶ 13–27, ECF No. 1. This matter is before the court on SCSU's motion for summary judgment, filed on December 8, 2009. ECF No. 21. For the reasons discussed below, the court **grants** the motion.

I. **BACKGROUND**

Plaintiff, a quadriplegic who uses a wheelchair, was hired by SCSU as a dispatcher in SCSU's Police Department (the "Department") in February 1988. Compl. ¶ 5, ECF No. 1. Although Plaintiff's specific duties have changed over the years, Plaintiff's work in the Department has largely been related to SCSU's parking system. See Pl.'s Dep. 14:6–12, 15:18–22:17, ECF No. 21-2. Plaintiff was reclassified from a dispatcher to an Administrative Specialist at pay level 2 sometime in 1995 or 1996. Compl. ¶ 6, ECF No. 1; Pl.'s Resp. 3, ECF No. 27. He retains that title and pay grade today. Pl.'s Dep. 36:1–6, ECF No. 21-2. Since applying for and being hired as a dispatcher

1

with the Department in 1988, Plaintiff has not formally applied for any other position at SCSU. Pl.'s Dep. 46:14–18, ECF No. 21-2.

In July 2005, Plaintiff e-mailed a letter to Department Chief Woodrow Morgan, complaining that he was improperly classified as an Administrative Specialist. Pl.'s Dep. 67:3–5, ECF No. 21-2. Copied on the letter were SCSU President Andrew Hugine, SCSU Vice President Dr. Kevin Rolle, Captain Samuel Bowser,[1] and Lieutenant Bonaparte. Letter from Jason Reed to Chief Woodrow Morgan 2, ECF No. 27-2. Plaintiff wrote, "I am being called a secretary and make about $24,000 per year," a title and salary he contended was incommensurate with his educational background, duties, and job performance. Id. at 1. He accused SCSU of discriminating against him based on his confinement to a wheelchair:

> It looks as if everyone around me (faculty, staff, new personnel brought to [SCSU] is receiving evaluations, monetary increases and re-defined positions without reservation. When it comes to me, year after year, there is nothing that can be done for me. . . . You do not regard me as a senior administrator that produces consistent, vital resources for [SCSU], nor have you seriously considered me for proper increases because of an age old stigma that "the handicapped don't need to be [taken] seriously when it comes to salaries compared to *normal* people."

Id. (emphasis in original). Specifically, Plaintiff complained that "one of the Orangeburg County Detention Center Inmates that painted parking lines for me was hired by Housing for $14.00 per hour" (a wage that Plaintiff claimed was higher than his own compensation) and that "[w]henever a police officer is hired at this department the moment they finish the academy their salary leaps over

---

[1] Plaintiff's letter lists "Capt. Bowser" among the copied parties. It appears from other evidence in the record that this is the same individual that others refer to at certain times as the Chief of the Department. Given that personnel has changed, numerous times, during the twenty-some years that Plaintiff has worked for the Department, wherever possible this order refers to Mr. Bowser and others by the titles ascribed to them in the relevant sections of the evidentiary record.

2

mine." Id. at 1–2. In the letter, Plaintiff did not specifically request that he be reclassified or receive a raise, but referenced earlier requests he had made "to be re-classed and given a $7,000 to $10,000 raise[.]" Id. at 2. He concluded the letter by stating "I need to be compensated" and "I can not take this any more." Id. Plaintiff claims that Vice President Rolle promised him that he would be "reclassified" to "pay band 5 or 6," but he never was. Compl. ¶ 8, ECF No. 1.

In November 2005, the Department was reorganized. Chief Bowser issued an Interoffice Memorandum detailing the changes, which included the promotion of Officer Elouise Muhammad to "Supervisor over Parking and Vehicle Registration and Victim Advocate." Reorganization Memo. 2, ECF No. 27-4.[2] Officer Muhammad was hired by the Department on July 1, 1996 as a Security Officer and classified as a Security Specialist II. Elouise Muhammad Aff. ¶¶ 1–2, ECF No. 21-5. Prior to her promotion to Victim Advocate and Parking Supervisor, she was responsible for general security and parking enforcement. Id. at ¶ 2. In her current position she "supervise[s] the Vehicle Registration Office, oversee[s] all parking issues and supervise[s] security at campus entrance booths." Id. at ¶ 3. Some of these duties had previously been performed by Plaintiff. Id. at ¶ 4; see also Gregory Harris Aff. ¶ 4, ECF No. 21-4.

In connection with her promotion in June 2006, Officer Muhammad received a $2,131 salary increase and a three percent general increase of $703, bringing her annual salary from $21,311 to

---

[2] Defendant appears to take issue with characterizing Officer Muhammad's change in duties following the reorganization as a "promotion." See, e.g., Elouise Muhammad Aff. ¶ 5, ECF No. 21-5 ("Although Chief Bowser called the assignment of these additional duties a 'promotion' in his Interoffice Memo . . . , my classification was not changed. At the time the additional duties were assigned to me, I was classified as a Security Specialist II and I remain in that classification today."). However, because the Interoffice Memorandum refers to it as a "promotion," the court will do the same.

3

$24,145. See ECF No. 27-5 at 1.³ In May 2008, two and a half years after the Department's reorganization, Officer Muhammad received a 15% salary increase. Elouise Muhammad Aff. ¶ 6, ECF No. 21-5. As a result of that increase and a general 1% increase, as of December 8, 2009 Officer Muhammad's salary was $28,884. Id. Officer Muhammad's grade and pay band has never changed from Security Specialist II. Id. at ¶¶ 2, 6. Plaintiff does not dispute that his salary remains higher than Officer Muhammad's salary. See Gregory Harris Aff. ¶ 7, ECF No. 21-4.

In June 2007, SCSU received a written complaint from a student alleging that Plaintiff inappropriately touched her while performing his duties as the appeal officer reviewing student traffic tickets. Id. at ¶ 8. SCSU claims that "[b]ecause previous complaints had been made regarding inappropriate behavior on the part of [Plaintiff] toward female students, the decision was made for [Plaintiff's] protection as well as the protection of [SCSU], that the duties of ticket appeals would be removed from [Plaintiff]." Id. On June 22, 2007, the Department informed Plaintiff by letter that "effective immediately, the job of handling ticket appeals has been temporally [sic] reassigned to Ms. Elouise Muhammad until further notice[]." Letter from Major Curtis W. Bigelow to Jason Reed (June 22, 2007), ECF No. 21-3 at 68. Plaintiff acknowledges that a student made a complaint, but he disputes its veracity. Plaintiff further disputes that any previous complaints were made and SCSU submits no additional details about or evidence to substantiate these alleged complaints.

On October 12, 2007, Plaintiff filed an internal employee grievance with SCSU, stating as its reason "Promotion (Not Considered)." SCSU Non-Faculty Employee Grievance Hearing Request, ECF No. 21-3 at 69. Under the subsection "Statement of Facts Involved," Plaintiff listed

---

³ The letter upon which Plaintiff relies to support this factual assertion has no addressee. For the purposes of summary judgment, the court will assume that Plaintiff could authenticate the letter as one addressed to Officer Muhammad.

4

at least thirteen general complaints, including discrimination in promotion and pay based on his disabilities and retaliation by various members of SCSU's administration. Id. He did not specifically complain of any particular position or promotion for which he was not considered. Instead, he alleged generally that "[d]ue to my Physical Dis-Abilities [sic] and not being able to compete for a Police Position, I am not considered for Department Seniority regardless of requesting it Only [sic] in the Parking & Vehicle Registration Division." Id. SCSU claims to have no record of the grievance, but does not dispute that it went unanswered. Def.'s Mot. 6–7, ECF No. 21-1.

On October 19, 2007, Plaintiff was informed by letter from Department Chief Gregory Harris that the student who had filed the complaint against him "would not fully cooperate with the investigation," and therefore "the merits of [the complaint] could not be fully determined." Letter from Gregory Harris to Jason Reed 1 (Oct. 19, 2007), ECF No. 21-3 at 70. "However, as a result of the investigative information that was available," Chief Harris informed Plaintiff that SCSU had determined it necessary "to take some definitive measures to ensure that our students and employees are not subject to any adverse actions." Id. Specifically, Plaintiff was informed that no female student would be allowed to work with him alone in his office and that his duties and responsibilities related to handling ticket appeals had been formally removed from his position. Id. Plaintiff was also directed to review and sign the Department's open door policy. Id.

Also sometime during October 2007, the Parking Division offices were moved from the Crawford-Zimmerman building complex to two locations next to each other, the Police Complex and the basement of Solider Hall. Gregory Harris Aff. ¶ 10, ECF No. 21-4; Elouise Muhammad Aff. ¶ 8, ECF No. 21-5. Duties related to student parking registration and activities are handled in the Solider Hall location and the remainder of the Parking Division operates from the Police Complex.

5

Gregory Harris Aff. ¶ 10, ECF No. 21-4; Elouise Muhammad Aff. ¶ 8, ECF No. 21-5. The Police Complex is wheelchair accessible, but the basement of Solider Hall allegedly is not. Plaintiff does not dispute that all of his duties are of the type conducted at the Police Complex location; none of his duties involves any of the activities that take place in the Solider Hall location. Gregory Harris Aff. ¶ 11, ECF No. 21-4; Elouise Muhammad Aff. ¶ 9, ECF No. 21-5.

On January 11, 2008, Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission against SCSU. ECF No. 21-3 at 57. Plaintiff alleged that

> On or about June 1, 2007 I was denied the position of parking supervisor for the fourth time. August 2006 about the third or fourth week, December 2006 about the second week and January during the third week I asked my Department Supervisor Chief Harris would he reverse Vice-President Dr. Rolle's decision of placing Ms. E. Muhammad (my subordinate) over me and properly make me the parking supervisor as the duties that I perform for the past eighteen years reflects.

Id. Plaintiff stated his belief that he was denied the position because of his disability and his gender, specifically: "I believe I was denied the promotion because my female subordinate personally baked, cooked for and picked up Vice-President Dr. Rolle's lunch from the campus diner countless times. I was never given the opportunity to compete by cooking and delivering lunch to Dr. Rolle which created an unfair advantage to gain his favor." Id. Plaintiff further complained that Defendant had failed to reclassify Plaintiff's position because of his disability and "repeatedly took duties out of my job description and placed them on my subordinate's job description and other co-workers who both only have only [sic] high school educations . . . reclassified and gave them credit for what I performed and gave them raises." Id.

On May 30, 2008, Plaintiff received a Dismissal and Notice of Rights from the Equal Employment Opportunity Commission ("EEOC") ("right-to-sue letter"). Compl. ¶ 12, ECF No. 1;

6

EEOC Dismissal & Notice of Rights, ECF No. 21-3 at 60. It provided that the EEOC was closing its file on Plaintiff's charge because "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." EEOC Dismissal & Notice of Rights, ECF No. 21-3 at 60. It informed Plaintiff that he may file a lawsuit pursuant to the ADA, but that he must do so within ninety days of receipt of the right-to-sue letter "or your right to sue based on this charge will be lost." Id.

On August 29, 2008, ninety-one days after he received the right-to-sue letter, Plaintiff filed the instant action. See Compl., ECF No. 1. Plaintiff alleges three causes of action. In his First Cause of Action, Plaintiff claims that SCSU discriminated and retaliated against him in violation of the ADA, by (1) repeatedly denying him a promotion and appropriate pay increases because of his disability; (2) promoting a less qualified employee to do a job that Plaintiff was qualified to do and had been performing adequately; (3) failing to acknowledge or answer Plaintiff's October 2007 internal grievance; and (4) moving an accessible part of Plaintiff's office to a non-accessible location in retaliation of Plaintiff's complaints. Compl. ¶¶ 13–18, ECF No. 1. In his Second Cause of Action, Plaintiff makes an independent claim of retaliation in which he alleges generally that "[t]hroughout his career . . . [Plaintiff] has continually complained, filed charges, and sued [SCSU] for physical access to his office, appropriate pay, and failure to promote him to the position he is actually performing." Id. at ¶ 20. As a result, Plaintiff claims that SCSU "has retaliated against [Plaintiff] by failing to promote him, and by failing to raise his pay to an appropriate level." Id. at ¶ 21. As his Third Cause of Action, Plaintiff alleges that SCSU's failure to answer, acknowledge, or provide him with a chance to be heard on the October 2007 grievance violated his due process rights. Id. at ¶¶ 23–27. As damages, Plaintiff seeks lost wages and benefits, punitive damages,

reparation for loss to his professional reputation, and attorney's fees and costs incurred in bringing this action. Id. at 4.

## II. ANALYSIS

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Paige Jones Gossett for pre-trial handling. On June 9, 2010 the Magistrate Judge issued a Report and Recommendation ("R&R") in which she recommended that SCSU's motion for summary judgment be granted. ECF No. 28. Plaintiff sought and was granted additional time to file objections to the R&R, which he filed on July 14, 2010. ECF Nos. 29, 30, 32.[4]

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the R&R to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). Plaintiff's specific objections are addressed, below.

---

[4] Plaintiff objects to language in the R&R that he complains "appears to chastize plaintiff for making two requests for extension of time to respond to defendant's motion for summary judgment[.]" Pl.'s Objections 1, ECF No. 32. He complains that he "should not be punished for any extensions of time in this case[.]" Id. The court does not construe these references—which appear in the R&R's initial, brief summary of the procedural background related to SCSU's motion—to chastise or punish Plaintiff. The court mentions extensions of time so that Plaintiff's filings will not appear to have been untimely to anyone reviewing only the instant order.

### A. Plaintiff's ADA Claims

Plaintiff objects to the Magistrate Judge's recommendation that this court find that Plaintiff's ADA claims are time-barred. An ADA claimant who fails to file a complaint within ninety days after receiving an EEOC right-to-sue letter generally forfeits the right to pursue his claim. 42 U.S.C. § 2000e-5(f)(1); see also Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 653–54 (4th Cir. 1987) (affirming dismissal of Title VII claim filed ninety-one days after plaintiff's wife accepted delivery of the notice of right to sue). Plaintiff admits that he filed this action more than ninety days after he received the right-to-sue letter. However, he submits that because he is confined to a wheelchair, it was "difficult for him to consult with an attorney." Pl.'s Objections 4, ECF No. 32. This fact, Plaintiff argues, amounts to "extraordinary circumstances" requiring that the limitations period be equitably tolled. Id. at 5.

The court agrees with the Magistrate Judge that equitable tolling would be inappropriate in this case. "Equitable tolling is a narrow limitations exception," which the Fourth Circuit has applied sparingly, mindful that it "always has the potential of becoming the exception that swallows up the congressional rule." Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir. 1990). A review of the case law reveals that, equitable tolling ordinarily is applied in cases where the employer has knowingly and intentionally caused the plaintiff to miss the deadline. See, e.g., English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987) (holding equitable tolling applies where the employer "has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action"); Weick v. O'Keefe, 26 F.3d 467, 470 (4th Cir. 1994) (holding equitable tolling justified where employer's "deliberate misconduct had lulled [the claimant] into inaction"). Plaintiff has failed to show that this is one of the rare situations where equitable tolling of the limitations period

9

should apply. His ADA claims for discrimination and retaliation are therefore barred.

### B. Plaintiff's Due Process Claim

Plaintiff also makes several objections to the Magistrate Judge's proposed factual findings, only one of which is material to Plaintiff's sole surviving claim for violation of due process. Plaintiff's objection "to the magistrate's insinuation that more than one student complained about sexual harassment by the plaintiff," Pl.'s Objections 3, ECF No. 32, although contextualized in his objections under the heading, "Due Process Claim," is not relevant to that claim as it is alleged in the Complaint. See Pl.'s Objections 3, ECF No. 32; see also id. at 6 ("In addition, [Plaintiff] continued to be accused of harassing a student, when he denied the charges and the student did not cooperate in the investigation."). The due process claim asserted in the Complaint contends only that SCSU's failure to answer, acknowledge, or otherwise "hear" Plaintiff's October 2007 grievance denied him "due process."[5] Compl. ¶¶ 23–27, ECF No. 1; it makes no mention of any accusations made by students. If Plaintiff wished to assert a due process claim based on SCSU's handling of the student's allegations, then he was required to have made such allegations in his Complaint. He may not now constructively amend his Complaint by asserting objections based on a theory of liability that he plainly failed to charge.

Accordingly, the only specific objection that Plaintiff makes that is relevant to the determination of his due process claim is his objection that "[t]he magistrate judge appears to credit defendant [SCSU]'s contention that it never received" the October 2007 grievance, contrary to the

---

[5] The Complaint does not specify whether the claim is substantive or procedural or even the authority under which it is asserted. However, the parties and the Magistrate Judge have treated the claim as alleging violations of the protections provided by the Fourteenth Amendment of the United States Constitution, brought pursuant to 42 U.S.C. § 1983. The court will, therefore, do the same.

rule that the record on summary judgment is to be viewed in the light most favorable to the non-moving party. Pl.'s Objections 2, ECF No. 32; see also Fed. R. Civ. P. 56. As an initial matter, the court disagrees that the R&R "credits" SCSU's contention that it never received the complaint. In summarizing the relevant background of the case, the R&R provides that SCSU "contends that it has no record of this complaint, and it did not provide [Plaintiff] with a hearing regarding it." R&R 2, ECF No. 28.

In any event, the issue of whether SCSU should be granted summary judgment on Plaintiff's due process claim does not turn on whether SCSU received the October 2007 grievance. Whether Plaintiff meant to state a claim for substantive or procedural due process, Plaintiff must present evidence upon which a fact finder could find that he had a property interest protected by federal due process guarantees. See, e.g., Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972); Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322, 328 (4th Cir. 2005). The Due Process Clause

> does not protect everything that might be described as a "benefit": "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) (quoting Roth, 408 U.S. at 577); see also Hamilton v. Bd. of Trustees, 319 S.E.2d 717, 721 (S.C. Ct. App. 1984) (applying Roth in a public employment context). Whether a party has a protectible property interest in employment triggering due process protections may be determined by looking to state or local law, as well as contracts between the parties or even their mutually explicit understandings. See, e.g., Morris v. City of Danville, 744 F.2d 1041, 1047 (4th Cir. 1984); Hamilton, 319 S.E.2d at 721.

Upon the record presented, the court agrees that Plaintiff has failed to produce evidence that would support a finding that he was deprived of a protectible liberty or property interest. Indeed, it is not clear that the job to which Plaintiff believes he was entitled ever existed. Plaintiff's complaints have been, at best, inconsistent. For example, in his July 2005 letter to Chief Morgan, Plaintiff complained that he had been wrongfully denied a $7,000 to $10,000 raise. Letter from Jason Reed to Chief Woodrow Morgan 2, ECF No. 27-2. Two years later, in his October 2007 grievance, he listed a catalogue of complaints under the heading "Promotion (Not Considered)," but failed to identify the promotion to which he claimed to have been entitled. See SCSU Non-Faculty Employee Grievance Hearing Request, ECF No. 21-3 at 69. In fact, in that grievance, one of his stated complaints is that Officer Muhammad (identified as "Supervisor and Victims Advocate") and others used "UnOrthodox Unfair Procedure" "to bring Allegedged [sic] Complaints against me by a Student to bring about demotion and/or firing," but nowhere does he assert his belief that Officer Muhammad's job is the "promotion" for which he was denied the opportunity to compete. Id. In the instant action, Plaintiff explicitly complains that he, rather than Officer Muhammad, should have been "promoted" to Parking Supervisor and contends that as a result of this wrongfully denied promotion he suffered a loss of income and benefits "now and into the future," but he does not contest SCSU's evidence that he continues to command a higher salary than Officer Muhammad. See Compl. 4, ECF No. 1; Gregory Harris Aff. ¶ 7, ECF No. 21-4.

However, even assuming, arguendo, that Plaintiff had a protectible property interest in a promotion, Plaintiff waived any claim that he was denied the opportunity to be heard on his grievance by failing to pursue it as provided for by SCSU's internal policies. This is because "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the

processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Plaintiff does not deny that under SCSU's grievance policies Plaintiff could have proceeded with an appeal to the State Human Resources Director when the Department failed to issue a final decision on Plaintiff's grievance forty-five calendar days after it was filed. SCSU Manual 6, ECF No. 21-6 at 7. Plaintiff does not deny that he failed to make such an appeal, nor does he claim that such an appeal was not available to him or argue that it was patently inadequate. Instead, Plaintiff asserts that "[h]is appeal took the form of a grievance before the South Carolina Human Affairs Commission." Pl.'s Objections 6, ECF No. 32. This, however, is not the procedure provided for in the SCSU's personnel policies and is not sufficient to maintain Plaintiff's due process claim. See, e.g., Alvin, 227 F.3d at 117–18 (affirming summary judgment dismissing plaintiff's claims that defendant-university denied him due process because plaintiff's attempts to trigger the university's internal grievance procedure did not comport with university regulations regarding the use of the grievance procedure); Walsh v. Lugoff-Elgin Water Dist., No. 3:08-3122, 2009 WL 1044631, at **8–9 (D.S.C. Apr. 20, 2009) (dismissing due process claims where plaintiffs failed to utilize available procedural protections). In sum, even if Plaintiff could show that he had a protectible property interest in a promotion entitling him to due process protections, Plaintiff's failure to pursue the procedural avenues available to him under SCSU's personnel policies would nevertheless bar his due process claim.

## III. CONCLUSION

Defendant's motion for summary judgment, ECF No. 21, is hereby **granted.** The court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

IT IS ORDERED.

/s/ Margaret B. Seymour<br>United States District Judge

September 17, 2010
Columbia, South Carolina